IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| JEFFERY S. COWGILL, | * | |
| ADC #145476 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 4:24-cv-00429-JJV |
| | * | |
| ESTELLA BLAND, et al | * | |
| Nurse Practitioner, Wellpath | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Jeffery S. Cowgill ("Plaintiff") is a prisoner in the Pine Bluff Unit of the Arkansas Division of Correction ("ADC") who has filed a *pro se* Amended Complaint seeking relief under 42 U.S.C. § 1983.  Plaintiff says while he was in the Cummins Unit from on or about January 5, 2024, to on or about June 6, 2024, Defendants Estella Bland, APN; Kara Snow, RN and Nicole Reddick, RN violated his Eighth Amendment rights by denying him medications he previously received at other ADC Units for the treatment of diabetic neuropathy and arthritis. (Doc. 4.)

Defendants Bland, Snow and Reddick have filed a Motion for Summary Judgment arguing they are entitled to summary judgment as a matter of law. (Docs. Nos. 113, 114, 115.) Plaintiff responded to Defendants' motion. (Doc. 116.) For the following reasons, the Motion is GRANTED, and Plaintiff's inadequate medical care claim against Defendants Bland, Snow and Reddick is DISMISSED with prejudice.

**II.   SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. FACTS

The facts viewed most favorably to Plaintiff and taken from his medical records (Doc No. 115-1; 115 at 3-25), are as follows. Plaintiff, when assigned to the Grimes Unit, was prescribed 60mg of duloxetine (also known as Cymbalta) to help manage his neuropathy. (Doc. No. 4; 115-24 at 1.) On January 5, 2024, Plaintiff was transferred to the Cummins Unit. (Doc. No. 115-1.) The Cummins Unit continued to administer Plaintiff's 60mg of duloxetine, starting on the evening of his transfer, during the bedtime pill call. (Doc. No. 115-24 at 1.) On January 11, 2024, Plaintiff refused to take glipizide for his type one diabetes. (Doc. No. 115-3.) Plaintiff was subsequently seen that day by Defendant Bland. (*Id.*) Defendant Bland spoke with Plaintiff, giving him verbal instructions regarding the medical treatment he was receiving. (*Id.*) Additionally, Defendant Bland

2

ordered follow-ups as needed along with, 200mg of naproxen to be taken twice a day for the following three days to manage Plaintiff's neuropathy pain. (Doc. No. 115 at 3-4.)

On January 18, 2024, Defendant Bland increased Plaintiff's naproxen prescription to 500mg, taken twice a day as needed. (Doc. No. 115-5.) On February 7, 2024, Plaintiff made a medication renewal request to Health Services, although his naproxen prescription did not expire until February 17, 2024. (Doc. No. 115-6.) And Defendant Reddick told Plaintiff that once his medication expired, he must follow the proper process for renewing it. (*Id.*)

About two weeks later, on February 22, 2024, Plaintiff made another request to Health Services for a medication renewal for naproxen, along with a request for prescribed footwear. (Doc. No. 115-7.) Defendant Bland examined Plaintiff; noting he did not present any deformity, swelling, discoloration or lesion and had normal range of motion in his feet, ankles and all digits. (*Id.*) Due to these findings Defendant Bland saw no indication for prescribed footwear and made a note in Plaintiff's medical file. (*Id.*) Defendant Bland ordered 30 days of naproxen and for Plaintiff to follow-up as needed. (*Id.*) The renewal for naproxen was for 220mg, taken twice a day for three days. (Doc. No. 115-8.) On February 29, 2024, Defendant Bland ordered another 30-day prescription of 500mg naproxen for Plaintiff to take twice daily as needed for pain. (Doc. No. 115-9.)

On March 8, 2024, Plaintiff made another request to Health Services, this time requesting high-top shoes for ankle support, a cane, a bilateral knee brace and knee sleeve, to be assigned to a bottom bunk and a prescription for a restricted diet. (Doc. No. 115-10.) Plaintiff presented these requests to Defendant Snow, who then referred Plaintiff to a provider for further evaluation. (*Id.*) Plaintiff was seen by Defendant Bland on March 14, 2024, regarding the request for a restricted diet. Defendant Bland submitted an order for Plaintiff be placed on a 2000-2200 medium calorie

diet. (Doc. No. 115-11.) Defendant Bland also noted in her report, "He presents to this encounter barely answering questions, speaking loudly [with] sharp tones toward this provider. He is yelling that he needs a diet script. He was asked to decrease his tones or he would have to reschedule - - he did not - - and stood and left the encounter." (*Id.* at 1.)

On March 22, 2024, Plaintiff refused a sick call encounter. (Doc. No. 115-12.) On March 25, 2024, Defendant Bland saw Plaintiff for a chronic care visit. (Doc. No. 115-13.) Defendant Bland evaluated Plaintiff and reviewed his lab work. (*Id.*) Defendant Bland noted that Plaintiff's diabetes was uncontrolled, so she added insulin to his medications. (*Id.*) She also made another order for a medium calorie diet and scheduled chronic care visits for the next three months. (*Id.*)

On April 9, 2024, Plaintiff made a request to Health Services regarding pain in his hip, feet, hands and ankles. (Doc. No. 115-14.) He was seen the next day by Defendant Reddick, who noted in her report that Plaintiff presented with a steady gait and did not have any physical deformities at the time of the examination. (*Id.*) Defendant Reddick verified Plaintiff had an active order for pain medication at the time and ordered a follow-up as needed. (*Id.*)

Six days later, on April 16, 2024, Plaintiff made another request to Health Services. (Doc. No. 115-15.) He stated in his request he had severe pain in his hands, feet, and hip and that he could not stand or walk without severe pain. (*Id.*) The next day, Plaintiff made another similar request to Health Services; this time stating he had severe pain in his ankles, feet, and hip and he could barely walk. Both of Plaintiff's requests were classified as "priority 3" meaning he should be seen within 72 hours of his request. (*Id.*) That same day Plaintiff presented to the infirmary, however after his vitals were taken, he refused the sick call encounter and signed the refusal of treatment form. (Doc. No. 115-15-16.)

On April 29, 2024, Plaintiff was seen by Defendant Reddick regarding medication

4

renewals. (Doc. No. 115-17.) Defendant Reddick noted in her report that Plaintiff stated he had pain in his hands, legs and feet, but he did not present any physical abnormalities or deformities. (*Id.*) She noted Plaintiff's duloxetine prescription expired that day and referred Plaintiff to a provider. On May 9, 2024, Plaintiff's duloxetine prescription was renewed for 30mg to be taken twice a day, and it was administered at that evening's pill call. (Doc. No. 115-17; 115-25.)

On May 3, 2024, Plaintiff made a Health Services request, stating his right hand was swollen, his hip, feet, and legs were also swollen, his left arm stung, and the balls of his feet and toes stung and burned. (Doc. No. 115-18.) Defendant Reddick examined Plaintiff and noted swelling and pain in his right hand. (*Id.*) On May 6, 2024, Plaintiff refused another sick call encounter and again signed the refusal of treatment form. (Doc. No. 115-19.)

On May 8, 2024, Plaintiff had a chronic care visit with a non-party doctor, who determined Plaintiff's diabetes was not well controlled and the root of his symptoms. (Doc. No. 115-20.) The doctor also noted Plaintiff had a normal gait without assistance, full range of motion of his cervical spine, and no swelling of his extremities. (*Id.*) The doctor then prescribed 5mg of glipizide to control his diabetes to be taken once a day for 30 days, and a follow-up in a month. (*Id.*)

On May 9, 2024, a non-party doctor renewed duloxetine 30mg to be taken twice a day for six months for neuropathy. (Doc. No. 115-20; 115-22.) Later that same day Plaintiff refused his fourth sick call encounter and refused to sign the refusal of treatment form. (Doc. No. 115-21.) Plaintiff refused his fifth sick call encounter on May 13, 2024. (Doc. No. 115-23.) That day, after Plaintiff was called to sick call several times, Plaintiff told a member of the correctional staff he did not want to be seen and walked off refusing to sign the refusal of treatment form. (*Id.*)

In their Brief in Support of Motion for Summary Judgment, Defendants state, from Plaintiff's first day at the Cummins Unit, January 5, 2024, to April 29, 2024, the expiration date

for his duloxetine prescription; Plaintiff was administered his medication 95.65% of the time.[1] (Doc. Nos. 114 at 4, 115-24.) From May 9, 2024, the day the prescription renewal for the duloxetine had been fulfilled, to June 6, 2024, the day that Plaintiff filed his amended complaint, Plaintiff was administered his duloxetine 81.13% of the time.[2] (*Id.*)

## IV.   ANALYSIS

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care." *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). To defeat summary judgment and proceed to trial on his Eighth Amendment inadequate care claim, Plaintiff must have evidence, viewed in light most favorable to him, that: (1) he had an objectively serious need for medical care regarding his diabetes, diabetic neuropathy, and arthritis; and (2) Defendants Estella Bland, APN; Nicole Reddick, RN; and Kara Snow, RN subjectively knew of, but deliberately disregarded, that serious medical need.  *See Shipp v. Murphy,* 9 F.4th 694, 703 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018); *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). It is undisputed Plaintiff's diabetes, diabetic neuropathy, and arthritis were objectively serious medical needs. (Doc. No. 115-2.) However, Plaintiff's evidence falls short on the second element.

The second element of deliberate indifference is a high threshold that surpasses both negligence and gross negligence. *Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023). In order to

---

[1] Plaintiff was not administered duloxetine at the February 21, 2024 am pill call; the February 29 pm pill call; the March 4 am pill call; the March 7 pm pill call; the March 10 pm pill call; the March 14 pm pill call; the March 17 pm pill call; the March 22 pm pill call; the March 27 pm pill call; and the March 28 pm pill call.  (Doc. No. 115-24.)

[2] Plaintiff was not administered duloxetine at the May 10, 11, and 13, 2024, am pill calls because he was a "no show"; the May 13 pm pill call; the May 18 pm pill call; the May 24 pm pill call; the May 25 pm pill call; the May 27 am pill call; the June 3 am pill call because he was a "no show"; and the June 4 am pill call. (Doc. No. 115-25.)

establish deliberate indifference, there must be evidence Defendants Bland, Reddick and Snow "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Smith v. Lisenbe,* 73 F.4th 596, 660 (8th Cir. 2023) (emphasis in the original). This level of mental culpability is "akin to criminal recklessness." *Presson v. Reed*, 65 F.4th 357, 367 (8th Cir. 2023).

Plaintiff claims when he transferred units, he stopped receiving neuropathy medications that he had been receiving for years, specifically gabapentin. (Doc. No. 4.) However, it is undisputed that he continued to receive duloxetine for neuropathy. And it is well settled medical providers remain free to exercise their independent professional judgment, and an inmate is not entitled to any particular course of treatment. *Barr v. Pearson*, 909 F.3d 919, 921-922 (8th Cir. 2018). Plaintiff has not provided any evidence the Defendants were aware he needed gabapentin; nor that the Defendants were deliberately indifferent to that need and that their deliberate indifference caused harm to him. *See Mason v. Corr. Med. Servs., Inc*., 559 F.3d 880, 885 (8th Cir. 2009). Additionally, it is undisputed Plaintiff was examined by Defendants Bland, Reddick, and Snow, in response to his reports of chronic pain due to his neuropathy, and Defendant Bland prescribed naproxen to address his pain. (Doc. No. 115-2.) *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").

Plaintiff also claims that on April 29, 2024, Defendant Bland refused to refill his prescription for duloxetine. (Doc. No. 4.) But medical records show, on April 29, 2024, Plaintiff had a sick call encounter with Defendant Reddick who referred the prescription renewal to Defendant Bland. (Doc. No. 115-17.) The prescription was renewed 10 days later, on May 5, 2024, for a lower dosage of 30mg; and Plaintiff was back to taking duloxetine that evening. (Doc. No.

115-17; 115-25.) Without question, Plaintiff periodically failed to receive a morning or evening dose of that medication. However, the Eighth Circuit has held a short delay in an inmate receiving their prescribed medications does not rise to the level of a constitutional violation. *Hines v. Anderson*, 547 F.3d 915, 920-21 (8th Cir. 2008) (holding unspecified delays in refilling the prisoners' various prescriptions did not rise to the level of constitutional violation); *Ervin v. Busby*, 992 F.2d 147, 150-51 (8th Cir. 1993) (finding a month-long delay in refilling pretrial detainee's antidepressant prescription was not a constitutional violation.)

Dr. Mahlon Maris, who is a family practice physician in the state of Arkansas, says in his sworn affidavit, Defendants "appropriately prescribed duloxetine and naproxen to help manage his pain" caused by diabetic neuropathy." (Doc. No. 115-2 at 2). Dr. Maris also stated that Plaintiff's moments of non-compliance with his medication and diet is what caused his "diabetes to be uncontrolled" and is what led to his "increased neuropathy" experiences. (*Id.* at 1.) Moreover, it is not disputed that Plaintiff denied his medication and refused to attend various sick calls on five separate occasions between March 22, 2024, and May 13, 2024. (Doc. No. 115-2; 115-12;115-16; 115-19; 115-21; 115-23.) Plaintiff's admitted failure to cooperate with treatment does not help his cause. *See Beck v. Skon*, 253 F.3d 330, 333-34 (8th Cir. 2001) (affirming summary judgment when, among other things, a prisoner failed to comply with the recommended treatment); *Gibson*, 433 F.3d at 646 (finding a prisoner's "decision to decline medical treatment" was a relevant factor in granting summary judgment). Importantly, Dr. Maris says Plaintiff's occasional failure to miss a morning or evening dose of duloxetine did not cause him any harm. And, ultimately, he concludes that based on his expertise, Plaintiff received "appropriate, adequate, and timely" treatment from Defendants Bland, Reddick, and Snow, from January 2024 to June 2024. (Doc. No. 115-2.)

Plaintiff has not offered any evidence that contradicts these findings. *See Cejvanovic v. Ludwick*, 923 F.3d 503, 507-8 (8th Cir. 2019); *Dulany v. Carnahan,* 132 F.3d 1234,1240 (8th Cir. 1997). ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment."). Accordingly, I conclude Defendants Bland, Reddick and Snow are entitled to summary judgment on the inadequate medical care claim raised against them.

**V.    CONCLUSION**

IT IS, THEREFORE, ORDERED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. No. 113.) is GRANTED, Plaintiff's inadequate medical care claim against Defendants Estella Bland, Nicole Reddick and Kara Snow is DISMISSED with prejudice, and this case is CLOSED.

2.    I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order, as well as the accompanying Judgment, would not be taken in good faith.

DATED this 18th day of November 2025.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE